# BOYD'S APPEAL.

An owner of stock who has fraudulently been induced to deliver the stock with an irrevocable power of attorney to transfer cannot recover it from an innocent purchaser.

Appeal from Court of Common Pleas No. 4, of Philadelphia County. In Equity. No. 33 January Term, 1882.

The facts in the case appear in the master's report, which was as follows:

The master finds the following facts:

1. That certificates No. 84,884 for *ten* shares, No. 85,121, for *ten* shares, No. 33,142 for *forty* shares, No. 21,663 for *eighteen* hares, No. 18,488 for *two* shares, and No. 61,983 for *twenty* shares of the capital stock of the Pennsylvania Railroad Co.,

3 Wa 21

the right to which is the issue in this suit, were originally the property of Elizabeth Boyd.

2. That the said certificates were placed by the said Elizabeth Boyd with her counsel, Robert H. McGrath, Esq., at his request and for *safe keeping only*, and that such placing antedated the execution of the powers hereinafter spoken of, had no connection therewith, and was a perfectly independent and distinct act.

3. That some time prior to October 27th, 1866, the said Robert H. McGrath, Esq., obtained Miss Boyd's signature to the power of attorney to transfer 80 shares, Exhibit "B," and some time prior to July 27th, 1872, obtained her signature to the power of attorney to transfer 20 shares, exhibit "A." That these powers of attorney were executed by Miss Boyd at McGrath's request, confiding implicitly in him, but without inquiry as to their real contents and purposes and with no inquiry thereafter as to the way in which they had been used.

That McGrath having obtained the said signatures fraudulently, attached Exhibit "B" to certificates for 80 shares of the said stock belonging to Miss Boyd, and which were in his possession, as above stated, for safe keeping only, and obtained from Robert W. Pechin on October 27th, 1866, a loan of four thousand dollars at six months, *at seven per cent.* discount, and deposited with the said Robert W. Pechin the said certificates and power as collateral security, which loan was renewed every six months at the same rate of discount, until October 27th, 1877, McGrath falsely representing that the loan was for Miss Boyd, claiming for himself no title in the stock, and giving Mr. Pechin a due bill in the following form:
$4,000.

Memorandum.                                   OCT. 27, 1866.
Due to Robert W. Pechin, four thousand dollars, in six months from date.                    ROBERT H. McGRATH.
Collateral 80 shares Penna. R. R.                    *Attorney.*

McGrath receiving the money from Mr. Pechin and applying it to his individual use, and paying the discount at each renewal with his individual check.

5. That McGrath obtained another loan of one thousand dollars on July 26th, 1872, at *eight per cent.*, from the said Robert W. Pechin, under circumstances similar to those set out in p. 4, and deposited with Mr. Pechin twenty shares of Miss Boyd's stock with the power exhibit "A" attached as collateral security, giving no due bill therefor and renewing the loan down to March 2, 1876, the money being received by McGrath and applied to his individual use.

6. That the said shares continued to stand on the books of the railroad company in the name of Miss Boyd, and she collected the dividends and allotments of stock thereon, until shortly before the filing of the bill in this case, and during that time Miss Boyd had no knowledge nor information of the matters set out in pp. 4 and 5, and had no room to doubt that her certificates were in the safe keeping of McGrath.

7. That no authority whatever to McGrath to sign any such due bill as alleged, or to contract either of said loans existed and Miss Boyd never ratified the said loans or paid any interest thereon or received any part of the proceeds thereof.

8. That Robert W. Pechin's good faith in the matter is unimpeached and he was innocent of all fraud.

9. That Miss Boyd's misplaced confidence in her attorney, Robert H. McGrath, Esq., has been the cause of the loss; she gave to him the means of doing wrong.

Numerous authorities were cited by the counsel for the respective parties to an examination and consideration of which the master has devoted much time.

No criticism of the various cases nor discussion of the many legal principles which at first would seem to be involved can be of any value or importance, in view of the recent decision of our Supreme Court, in Pennsylvania Railroad Company's Appeal, 5 Norris, 80. In that case the Supreme Court reversed the Court below and refused a decree to a plaintiff whose equities were quite as strong as Miss Boyd's are here, as against a trustee who had been guilty of negligence in the discharge of his trust. In Fearson's case—as in this—the cestificates of stock were deposited with a member of the Bar for safe keeping—in that case the powers of attorney had been

revoked by the death of Samuel P. Fearson—in this there was no revocation of the powers. Creeley pretended to be the agent of the dead man and *forged* his name to the notes for which the stock was given as collateral. McGrath pretended to be the agent of Miss Boyd, but perpetrated no forgery, giving his due bill *as attorney* for the loan, for which he pledged Miss Boyd's stock as security.

A comparison of the two cases certainly justifies the conclusion that Miss Boyd has no equity which Fearon's executrix had not.

The Supreme Court says, Penna. Railroad Co.'s Appeal (*supra*), "But there certainly was negligence on the part of the appellee. As executrix she placed the certificates in the hands of Creely as her attorney, with the blank powers endorsed, uncancelled. Thus by her act he was enabled to commit the fraud. The equities of the respective parties are not equal. Where one of two parties who are equally innocent of actual fraud must lose, it is the suggestion of common sense as well as equity that the one whose misplaced confidence in an agent or attorney has been the cause of the loss shall not throw it on the other." That is to say that placing the certificates with *revoked* but uncancelled powers endorsed thereon in the hands of an attorney for safe keeping only, is such negligence on the part of the owner as will defeat an action against a trustee who negligently permits a transfer of the stock. In the case cited the Court below made a decree in favor of the third party (Schultz)—(here Pechin's executors)—but his relation to the case was not the subject of review in the Supreme Court, although it is covered by the principles of the opinion. Schultz (Pechins executors) was "one of two parties equally innocent of actual fraud," and Miss Boyd's misplaced confidence in an agent or attorney has been the cause of the loss. "By her act he (McGrath) was enabled to commit this fraud," and it is "the suggestion of common sense as well as equity" that the loss shall not be thrown on the other party.

In this connection it may be important to note the fact that the question of agency, as well as other questions discussed

before the master, were presented to the Court in Penna. Railroad Company's Appeal, but were not passed upon, as the single question of negligence determined the rights of the parties and controlled the decree of the Court.

Miss Boyd loses her title to the stock by her negligence and misplaced confidence in her attorney. Miss Boyd in her testimony says: "I had unbounded confidence in Robert H. McGrath and I would have signed almost any paper he would have offered me—never doubting in the least his honesty." * * * "I thought everything he asked me to sign was correct." * * * "I know I have signed papers, but I could not tell what they were for—because I had so much confidence in him that I would sign anything he would give me." The master reports in favor of the executors of Robert W. Pechin to the extent that they hold the stock in issue as security for the two loans made by Robert W. Pechin to Robert H. McGrath.

The facts found by the master, and upon which his opinion is based, do not all appear in the pleadings, nor do the plaintiffs in the original bill (the defendants in the cross bill) defend their title to the stock on the ground of Mrs. Boyd's negligence. Miss Boyd's cross bill can be disposed of with her negligence found as a fact without it being set up as a defence.

The Court has ample power of amendment—limited only by the discretion of the Court—and the master is of the opinion that the plaintiffs in the original bill (Pechin's executors) should have leave to amend their bill to conform to the facts found by the master. These executors had no knowledge of the transactions betwen the parties, and without negligence or fault on their part the bill was drawn upon the facts as they appeared upon the papers in their possession. The real facts of the case were only disclosed by the testimony of Miss Boyd and Mr. McGrath.

The master calculates the indebtedness upon the two loans to McGrath (principal and interest) at the time of the filing of this report to be five thousand and ninety seven 38-100 ($5,097.38) as security for which he finds that the executors of Robert W. Pechin, deceased, have a good title to the

certificates of stock in issue. The counsel for Miss Boyd requested the master to find the facts as set out in the written request hereto annexed. The master reports a form of decree as follows:

And now, to wit, this          day of          A. D. 1881, this cause came on to be heard upon bill, answer, proofs and the report of the master, and was argued by counsel and considered by the Court, whereupon it is ordered, adjudged and decreed that William H. Wallace, William Kinsey and William McLean, executors of the last will and testament of Robert W. Pechin, deceased, have a good title to the certificates of stock in the bill mentioned as a security for an indebtness of $5,097.38, and that upon payment by said Elizabeth Boyd to said executors of the sum of $5,097.38, with interest from the 20th day of May, A. D. 1881, within thirty days, that the said executors do assign and transfer the said certificates of stock to *her*, the said Elizabeth Boyd, otherwise the defendant, the Pennsylvania Railroad Company, do permit a transfer of the said shares by the said executors upon the powers now in their possession, and do issue new certificates therefor upon the surrender of the old ones mentioned in the bill; that the cross bill of Elizabeth Boyd be dismissed and that Elizabeth Boyd pay the costs of suit.

---

The Court overruled exceptions and entered the decree recommended by the master. Elizabeth Boyd then appealed to the Supreme Court.

*C. P. McCalla* and *J. H. Little*, Esqs., for appellant, argued a fraud had been perpetrated on appellant. That the powers of attorney being to sell and transfer did not authorize a pledge of the stock; Merchants' Bank vs. Livingston, 29 Sickles, 223; Hampton vs. Matthews, 14 Pa., 108. Pechin should have inquired as to McGrath's agency; Decan vs. Shipper, 35 Pa., 244; Parke vs. Neely, 90 Pa., 59; Wood's Appeal, 92 Pa., 379.

*R. M. Logan* and *G. M. Dallas*, Esqs., contra, argued that the delivery of the stock and power of attorney to transfer passed the title; Penna. Railroad Co.'s Appeal, 86 Pa., 80;

Wood vs. Smith, 8 W. N. C., 441; Burton's Appeal, 8 W. N. C., 505; Building Association vs. Sendmeyer, 50 Pa., 67; Denny vs. Lyon, 38 Pa., 101; Costen's Appeal, 13 Pa., 292.

The Supreme Court affirmed the decree of the Common Pleas on April 3rd, 1882, in the following opinion,

PER CURIAM:

This case, we think, is not distinguishable in principle from Pennsylvania R. R. Co.'s Appeal, 86 Pa., 80.

Decree affirmed and appeal dismissed at the costs of the appellant.